UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                                NOT FOR PUBLICATION

        5th Street Parking LLC,                     Chapter 11
                                                      Case No. 19-12821 (MG)

                              Debtor.

------------------------------------------------------------x

**MEMORANDUM OPINION GRANTING USC 1994 MADISON LLC'S MOTION (I) TO LIFT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(3) AND (II) FOR *IN REM* RELIEF PURSUANT TO 11 U.S.C. § 362(d)(4)**

*A P P E A R A N C E S :*

LAW OFFICES OF JULIO E. PORTILLA, P.C.
*Attorneys for Debtor 5th Street Parking LLC*
555 Fifth Avenue, 17th Floor
New York, New York 10017
By:    Julio E. Portilla, Esq.

KRISS & FEUERSTEIN LLP
*Attorneys for USC 1994 Madison LLC*
360 Lexington Avenue, Suite 1200
New York, New York 10017
By:    Jerald C. Feuerstein, Esq.
         Stuart L. Kossar, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the motion of USC 1994 Madison LLC's ("Movant") for entry of an order (1) granting relief from the automatic stay pursuant to Bankruptcy Code sections 105(a), 361, 362(d)(1), 362(d)(2), and 362(d)(3) so that it may exercise all rights and remedies available to it under applicable law with respect to the real property at 1994-2002 Madison Avenue and 1998 Madison Avenue, New York, New York 10035 (the "Property"), (2) granting *in rem* and/or prospective relief pursuant to Bankruptcy Code sections 105(a), 109(g)(1) and 362(d)(4), such that the automatic stay from any future filings under the Bankruptcy Code by 5th Street Parking LLC ("Debtor") and/or any person or entity having or claiming an interest in

1

the Property within two years shall not attach to the Property, and (3) waiving the fourteen-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3). ("Motion," ECF Doc. # 11.) The Motion is supported by a Memorandum of Law in Support of Order Granting Relief from the Automatic Stay and *In Rem* Relief from the Automatic Stay ("Lift Stay MOL," ECF Doc. # 12) and the affidavit of Seth Weissman, the manager of Movant. ("Weissman Affidavit," ECF Doc. # 13). Objections to the Motion were due on January 15, 2020. On January 21, 2020, Debtor's counsel, Julio E. Portilla, Esq., filed an untimely objection to the Motion ("Debtor's Objection," ECF Doc. # 16), and Movant filed a reply to Debtor's Objection ("Movant's Reply," ECF Doc. # 17).

For the reasons set forth below, the Court finds that the automatic stay must be lifted pursuant to Bankruptcy Code section 362(d)(3) because of Debtor's failure, as a Single Asset Real Estate ("SARE") entity, to comply with the requirements to preserve the automatic stay in a SARE case. The Court also grants Movant *in rem* relief under Bankruptcy Code section 362(d)(4), permitting Movant to proceed with foreclosure on the Property unimpeded by any future filings by the Debtor in this Court or any other court for the next two years.

## I. BACKGROUND

### A. The Loan and Assignments to Movant

On April 30, 2015, Debtor executed, acknowledged, and delivered to Nautilus Capital LLC ("Nautilus") a Promissory Note (the "Note") covenanting and agreeing to repay Nautilus in the amount of $2,000,000. (Motion ¶ 9; Ex. A.) On that same day, to secure repayment of the debt, Debtor executed, acknowledged, and delivered a Mortgage and Security Agreement (the "Mortgage") to Nautilus encumbering the Property. (*Id.* ¶ 10; Ex. B.) The Mortgage was recorded on May 14, 2015 in the Office of the City Register of the City of New York, County of

New York. (*Id.*) As further security for the Note, Debtor's principal, Mylene Liggett, executed an Unlimited Guaranty to guarantee all obligations under the Note to Nautilus in the amount of $2,000,000. (*Id.* ¶ 11; Ex. C.)

On February 15, 2018, Nautilus assigned the Note and Mortgage to L&L Capital Partners LLC ("L&L") pursuant to an Assignment of Mortgage, which was recorded in the City Register on July 16, 2018. (*Id.* ¶ 12; Ex. D.) The Note was endorsed to L&L, as evidenced by the allonge affixed to the Note. (*Id.*; Ex. A.) On May 1, 2019, L&L assigned the Note and Mortgage to Movant pursuant to an Assignment of Mortgage, which was recorded in the City Register on May 13, 2019. (*Id.* ¶ 13; Ex. E.) On May 1, 2019, the Note was endorsed to Movant as evidenced by the allonge affixed to the Note. (*Id.*; Ex. A.) Movant now owns and holds the Note, Mortgage, and Guaranty (collectively the "Loan Documents"). (*Id.* ¶ 14.)

**B.    The Default and Foreclosure Action**

On August 1, 2016, Debtor defaulted on its obligations under the Loan Documents by failing to make the required monthly payment due on August 1, 2016, and each payment thereafter. (*Id.* ¶ 15.) As a result, Nautilus declared the balance of the debt immediately due and payable and commenced a mortgage foreclosure action in the Supreme Court of the State of New York, County of New York under Index No. 850015/2017 in the matter originally styled *Nautilus Capital LLC v. 5th Street Parking LLC, et al.* (*Id.* ¶ 16.)

On January 12, 2017, Nautilus filed a summons and complaint ("Complaint") with the New York County Clerk. (*Id.*; Ex. F.) On February 26, 2017, Debtor and Debtor's principal responded to the Complaint by filing an answer and asserting counterclaims. (*Id.* ¶ 17; Ex. G.) Nautilus then filed an application for entry of an order granting summary judgment, and the state court granted Nautilus' application. (*Id.* ¶ 20; Ex. J.) After failed attempts by the Debtor to

3

vacate the state court's summary judgment decision, the state court granted a Judgment of Foreclosure and Sale in favor of Nautilus on September 19, 2019, entitling Nautilus to foreclose on the Property and awarding Nautilus $3,181,169.26. (*Id.* ¶ 24; Ex. L.) Pursuant to a Notice of Sale filed on November 14, 2018, a foreclosure sale was scheduled for December 11, 2018. (*Id.* ¶ 25; Ex. M.)

### C. Debtor's Second Bankruptcy Filing[1]

On December 7, 2018, four days before the foreclosure sale was scheduled to take place, Debtor filed a petition for chapter 11 bankruptcy relief. (Case No. 18-13979-mg-reg.) Due to the bankruptcy filing, the foreclosure sale set to take place on December 11, 2018 was stayed. (*Id.*; Motion ¶ 25–26.) L&L filed an application pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(2), and 362(d)(3) seeking relief from the automatic stay to continue the foreclosure action, and the Court entered an order on April 8, 2019 granting L&L's application. (Motion ¶ 29; Ex. O.) The Court found that, for substantially similar reasons as those present here, it was required to lift the stay under section 362(d)(3) because Debtor failed to file a plan of reorganization within the 90-day window prescribed by the statute. (*Id.*) The U.S. Trustee then filed a motion to dismiss the case or convert it from chapter 11 to chapter 7. (Case No. 18-13979-mg-reg, ECF Doc. # 26.) The Court entered an order on June 25, 2019 granting the motion to dismiss. (*Id.* at ECF Doc. # 32.)

### D. Debtor's Third Bankruptcy Filing

After the Court lifted the automatic stay, Movant scheduled a new foreclosure sale for August 7, 2019, which was then adjourned to September 4, 2019 due to the unavailability of the

---

[1] Movant's papers do not address Debtor's first bankruptcy filing, which occurred before the events at issue here relating to the Note and Mortgage. On August 14, 2012, Bergen Development LLC filed a bankruptcy petition in the Eastern District of New York under case no. 12-45900. Bergen Development LLC listed 5th Street Parking LLC and Mylene Liggett as its co-debtors. (*See* Case No. 12-45900, ECF Doc. # 1.)

4

state court appointed referee. (Motion ¶¶ 32, 35.) One day before the second scheduled foreclosure sale, on September 3, 2019 (the "Petition Date"), Debtor filed a voluntary petition under chapter 11. ("Voluntary Petition," ECF Doc. # 1; Motion ¶ 36.) In the Voluntary Petition, Debtor describes its business as a SARE entity and represents that Nautilus holds a secured claim on the Property for $3,181,169.26 and Movant holds a secured claim for $0. (Voluntary Petition at 2, 12; Motion ¶ 37.)

Mylene Liggett's Affirmation pursuant to Local Rule 1007-2 also provides background information on Debtor and Debtor's business. ("Liggett Affirmation," ECF Doc. # 2.) Liggett erroneously stated in her Affirmation that "[t]here is no other or *prior* bankruptcy case filed by or against the Debtor." (*Id.* ¶ 3) (emphasis added). The Liggett Affirmation indicated that the purpose for Debtor's bankruptcy filing was to file a joint venture agreement with Icon Realty Capital to pay off the lien that is the subject of the foreclosure action.[2] (*Id.* ¶ 14.) Liggett affirmed that Debtor's income was $0 and Debtor's estimated operating expenses for the next 30 days were $9,416.66. (*Id.* ¶ 23.) The operating expenses, however, do not include the repayment of debt under the Mortgage.

To date, Debtor has not filed a plan of reorganization or made any post-petition payments to Movant. (Motion ¶ 40.) Debtor has only filed one operating report for the month of September 2019, which shows a cash balance of $420.00 at the end of the month due to "loans and advances" without further explanation. ("September 2019 Operating Report," ECF Doc. # 10.)

On October 18, 2019, a meeting of creditors was held pursuant to 11 U.S.C. § 341, and an initial case conference was held on October 23, 2019. (Motion ¶¶ 38–39.) At the case

---

[2]    Debtor has not entered into a joint venture agreement with Icon Realty Capital.

5

conference, Movant raised concerns regarding the Property's declining value and stated that this case seemed nearly identical to the previous bankruptcy case. The Court noted that it had granted L&L's motion to lift the automatic stay in the earlier case, and that any order entered in the future could require *in rem* relief.

### E. The Motion

On December 11, 2019, Movant filed the instant Motion. Movant contends it is entitled to stay relief under sections 362(d)(1), (2), and (3) of the Bankruptcy Code and *in rem* relief under Bankruptcy Code sections 105(a), 109(g), and 362(d)(4). Movant alleges that $3,714,519.86 is due and owing to it, while the value of the Property is $3,220,000 based on an appraisal from October 14, 2019 ("Movant's Appraisal"). (*Id.* ¶ 46; Ex. R.) Movant contends that Debtor has failed to provide Movant with any payments since the Petition Date, Debtor has failed to pay post-petition insurance and taxes, there is no prospect for reorganization, and based on Movant's Appraisal, there is no equity remaining in the Property. (Lift Stay MOL at 11–12.) Movant also argues that it is entitled to stay relief because the Debtor is a SARE entity, and it did not propose a plan within 90 days of the Petition Date, as required by section 362(d)(3). (Lift Stay MOL at 19.)

With respect to *in rem* relief pursuant to Bankruptcy Code section 362(d)(4), Movant argues that Debtor has failed to make any payments under the Loan Documents since 2016 and the timing and sequencing of Debtor's multiple bankruptcy petitions evidences bad-faith delay tactics that will continue unless *in rem* relief is granted. (*Id.*)

### F. Debtor's Objection

Debtor's Objection to the Motion maintains that the Property is valued at $10,500,000 based on an appraisal conducted by an independent certified Real Estate Adviser on March 29,

2019 ("Debtor's Appraisal").  (Debtor's Objection ¶ 4; Ex. A.)  Debtor's Appraisal is a restricted appraisal prepared for Debtor's counsel, Julio Portilla, Esq., and was done in reliance on a certified letter provided by an architect stating that the Property could be rezoned and approved for development.  (*Id.*; Ex. A.)  Debtor's Appraisal is "predicated upon the extraordinary assumption that the [Property] may be developed in accordance with the provided architect's letter; evidence to the contrary would require a revision of our value conclusions."  (*Id.*)  It also states that while there appear to be no easements or encroachments on the Property, the appraisal company was not provided with a title report, which may detail the existence of an unknown easement, encroachment, or encumbrance.  (*Id.*)  Debtor's Appraisal did not provide any further data to support its analysis.  At a January 22, 2020 hearing before the Court, Debtor's counsel conceded that Debtor has not made any efforts to rezone the Property, which would be necessary to develop the property under the "extraordinary assumption" on which the Debtor's Appraisal is based.

Debtor contends that lifting the automatic stay "while the Debtor is working assiduously in orchestrating a plan to reorganize its affairs would be incompatible with [section 362] . . . [it] would force the Debtor to redirect its efforts to further litigation in state court, which would further delay its efforts to reorganize."  (*Id.* ¶ 16.)  But when asked at the January 22, 2020 hearing on the Motion about the steps that the Debtor has taken in "working assiduously in orchestrating a plan to reorganize its affairs," Debtor's counsel referred to reaching out to potential lenders, but the efforts so far have not proved fruitful.

According to Debtor, *in rem* relief would also be inappropriate because Debtor's chapter 11 filing was not done in bad faith or as a delay tactic, but rather to reorganize by negotiating with a potential investor who is willing to pay "Movant's lien in full." (*Id.* ¶¶ 36–38.)  At the

7

January 22, 2020 hearing, however, Debtor's counsel did not indicate that any material progress had been made to secure financing. And, quite frankly, this is the same tune repeated to the Court during the earlier bankruptcy cases as well.

### G. Movant's Reply

Movant's Reply argues that Debtor's Objection did not address Debtor's failure to comply with section 362(d)(3)'s statutory requirements. (Movant Reply ¶ 3.) Movant's Reply further argues that without *in rem* relief pursuant to section 362(d)(4), Debtor's frivolous filings will continue to hinder and delay Movant's efforts to foreclose on the Property in state court. (*Id.* ¶ 4.)

## II. LEGAL STANDARD

The Bankruptcy Code imposes an automatic stay of nearly all litigation against the debtor upon its filing of a bankruptcy petition. 11 U.S.C. § 362(a). Movant seeks relief from the automatic stay pursuant to section 362(d)(3)[3] because Debtor is a SARE entity that has not fulfilled its obligations under that provision. With respect to a SARE debtor, the court shall grant stay relief unless a debtor has "filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or . . . commenced monthly payments . . . in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." 11 U.S.C. § 362(d)(3). The Debtor has not proposed a plan and it has not commenced making monthly payments.

The Bankruptcy Code also allows a court to lift the stay and grant *in rem* relief if "the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud

---

[3] The Court notes that Movant also argued that the automatic stay should be lifted pursuant to Bankruptcy Code sections 361, 362(d)(1) and 362(d)(2). It is unnecessary to address these arguments since the stay must be lifted under section 362(d)(3), as even the Debtor's counsel acknowledged during argument. (*See* Section III.B, *infra*.)

8

creditors that involved either (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4).

The Court addresses both provisions in turn.

### A. Bankruptcy Code Section 362(d)(3)

A showing under Bankruptcy Code section 362(d)(3) is straightforward. The threshold issue is whether the bankruptcy case involves "single asset real estate." The term "single asset real estate" means:

> [R]eal property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B).

If a debtor's SARE status is acknowledged on its bankruptcy petition, then the debtor must propose a plan or commence monthly payments to secured creditors within 90 days after the entry of the order for relief. In voluntary cases, the filing of a petition constitutes an order for relief. *See* 11 U.S.C. § 301. Thus, in voluntary cases where a debtor acknowledges its SARE status, as it did in this case, the debtor has 90 days from the filing of the petition to meets its section 362(d)(3) obligations, or the court must grant relief from the stay.[4]

---

[4] If a debtor does not acknowledge its SARE status, the timeframe under section 362(d)(3) can be longer. In those instances, the debtor has either 90 days after the entry of the order for relief or 30 days after the date the court determines that the debtor is a SARE to meets its obligations, whichever is longer. *See In re Amagansett Family Farm, Inc.*, Nos. 11–73929–AST, 11–73928–AST, 11–73930–AST, 2011 WL 5079493, at *3 (Bankr. E.D.N.Y. Oct. 25, 2011).

### B. *In Rem* Relief Pursuant to Bankruptcy Code Section 362(d)(4)

"In order to appropriately grant *in rem* relief, the record must clearly demonstrate an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral." *In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004). To obtain relief under Bankruptcy Code section 362(d)(4), the movant has the burden of "establishing that the current filing is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay and defraud the [movant]." *In re Lemma*, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008). A creditor moving for relief pursuant to section 362(d)(4) "bears the initial burden to establish a prima facie case as to all the elements." *In re Poissant*, 405 B.R. 267, 271 (Bankr. N.D. Ohio 2009).

The standard for *in rem* relief is not easily met because "[t]he language [in section 362(d)(4)] was deliberately chosen by Congress to impose a substantial burden of proof on secured creditors . . . ." *In re O'Farrill*, 569 B.R. 586, 591 (Bankr. S.D.N.Y. 2017) (quoting 3 COLLIER ON BANKRUPTCY ¶ 362.05 (16th ed. 2016) (holding that *in rem* relief was warranted because debtor failed to honor its obligations of a debtor in good faith by failing to make consistent payments and instead used its bankruptcy filings as a scheme to delay foreclosure proceedings)). "The Bankruptcy Technical Corrections Act of 2010 amended section 362(d)(4) by replacing the 'and' with an 'or,' making the subsection consistent with other Code provisions that use the phrase 'hinder, delay or defraud'. . . ." 3 COLLIER ON BANKRUPTCY ¶ 362.05 (16th ed. 2016). "Although courts may no longer place undue reliance on the fraud element following the 2010 amendment, they will likely continue to require a substantial showing by the moving party before granting *in rem* relief." *Id.*

10

"A bankruptcy court can 'infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone' without holding an evidentiary hearing." *In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014) (quoting *Procel v. United States Trustee, et al. (In re Procel)*, 467 B.R. 297, 308 (S.D.N.Y. 2012)). "The extent of the efforts by a debtor to prosecute his bankruptcy case and '[t]he timing and sequencing of the filings' are important factors in determining whether a debtor has engaged in 'a scheme to delay, hinder, and defraud.'" *In re Richmond*, 513 B.R. at 38 (citing *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (alteration in original)). When debtors have exhibited a lack of effort in their bankruptcy proceedings and have instead engaged in serial filings to thwart the efforts of secured creditors exercising their rights under state law, courts have found that these serial filings are evidence of bad faith and abuse of the bankruptcy process. *See id.* at 385–86; *see also In re Blair*, No. 09-76150, 2009 WL 5203738, at *4 (Bankr. E.D.N.Y. Dec. 21, 2009) (granting *in rem* relief based on permissible inference of intent to hinder, delay, and defraud, and noting that factors weighing in favor of granting such relief are whether a debtor has sought to file and confirm a payment plan or has prosecuted his case to any meaningful extent).

    C.    **Rule 4001(a)(3) Temporary Stay of Order Granting Relief from Stay**

Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure provides that an order granting relief from an automatic stay is stayed until the expiration of 14 days after the order is entered unless the court orders otherwise. FED. R. BANKR. P. 4001(a)(3). "The purpose of this provision is to permit a short period of time for the debtor or the party opposing relief to seek a stay pending an appeal of the order." 9 COLLIER ON BANKRUPTCY ¶ 4001.05 (16th ed. 2016). The party obtaining relief from the automatic stay may convince the court to grant a shorter period of time for the debtor to seek a stay pending appeal, or even grant no time at all. *Id.*

11

However, a complete waiver of the 14-day stay in Rule 4001(a)(3) should only be granted in rare cases when ordered over the objection of any party that wishes to appeal, especially in circumstances where the appeal may become moot without a stay. *Id.*

### III.    DISCUSSION

#### A.    Movant Has Standing to Lift the Automatic Stay

As an initial matter, the Court finds that Movant has standing to lift the automatic stay as Debtor's creditor. *See In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010) (citing *Roslyn Savings Bank v. Comcoach (In re Comcoach)*, 698 F.2d 571, 573 (2d Cir. 1983)) (holding that "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party [must] be either a creditor or a debtor"). The Note and Mortgage entered into between Debtor and Nautilus was subsequently assigned to L&L and then to Movant. The allonge affixed to the Note reflects this assignment. Thus, the Note and Mortgage provide sufficient evidence to show that Movant is Debtor's creditor.

#### B.    The Court Lifts the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(3)

Debtor's failure to comply with section 362(d)(3)'s statutory requirements necessitates lifting the automatic stay. *See In re LDN Corp.*, 191 B.R. 320, 326–27 (Bankr. E.D. Va. 1996) ("The court views relief under § 362(d)(3) to be mandatory where its provisions are not strictly complied with."). The Debtor's petition designated itself as a SARE entity. (Voluntary Petition at 2.) On September 3, 2019, Debtor filed its Voluntary Petition but did not file a plan within the 90-day window prescribed by section 362(d)(3), which ended on December 2, 2019. Debtor also failed to request an extension of that time period and did not make any post-petition payments to Movant during that period. Finally, at the January 22, 2020 hearing, Debtor's counsel

acknowledged that Debtor did not comply with section 362(d)(3).  Accordingly, the Court must grant Movant's request for relief from the stay.[5]

### C. Movant is Entitled to *In Rem* Relief Pursuant to Bankruptcy Code Section 362(d)(4)[6]

Movant has satisfied its *prima facie* case for *in rem* relief so that the automatic stay from any future filings by the Debtor and/or any person or entity having or claiming an interest in the Property within two years shall not attach to the Property.  (*See* Motion ¶ 6.)  "When debtors have exhibited a lack of effort in their bankruptcy proceedings and have instead engaged in serial filings to thwart the efforts of secured creditors exercising their rights under state law, courts have found that these serial filings are evidence of bad faith and abuse of the bankruptcy process." *In re McKenzie*, Case No. 19-10130, 2019 WL 1750910, at *4 (Bankr. S.D.N.Y. Mar. 25, 2019).  *In re McKenzie* is instructive in this regard.  There, debtor filed a total of four bankruptcies, three of which were strategically timed just days before a foreclosure sale on the Property.  *Id*.  The court also found that debtor did not make good-faith efforts to prosecute his bankruptcy case.  *See id.*

This case raises similar concerns.  Debtor has filed three bankruptcies, two of which were strategically timed just days before a scheduled foreclosure sale on the Property.  Debtor has also demonstrated a lack of good faith in prosecuting its bankruptcy case, and the Court rejects Debtor's representation that it has worked "assiduously" to reorganize.  (Debtor's Objection ¶ 16.)  Debtor failed to file a plan of reorganization within the statutory timeframe prescribed by

---

[5] The Court notes, however, that the next foreclosure sale will not take place immediately, as represented by Movant's counsel at the January 22, 2020 hearing.  The Movant must first return to state court and obtain a new order authorizing and scheduling the foreclosure sale.  Lifting the automatic stay therefore does not preclude Debtor from continuing its efforts to secure replacement financing for the Property to pay off the Movant's claim before a foreclosure sale takes place.

[6] The Movant also seeks *in rem* relief under section 109(g)(1), but that provision is inapplicable here because it only covers individuals and family farmers.

13

section 362(d)(3) and only filed one monthly operating report during the entirety of the case. Debtor's operating reports, court appearances, and court filings fail to demonstrate a realistic plan for reorganization. Moreover, with respect to the Loan Documents, Debtor has not made any post-petition payments; and, as of the Motion's filing date, the total amount of prepetition and post-petition debt owed to Movant is allegedly $3,714,519.86. (Motion ¶ 46.)

### D.     Rule 4001(a)(3) Temporary Stay Is Waived

The Court waives the temporary stay provided in Rule 4001(a)(3) so that Movant can take immediate action against the Property. Waiving the stay does not moot an appeal of this order because Movant already has the state court's judgment of foreclosure blessing the sale of the Property. A stay pending appeal is not appropriate under the circumstances here because the Debtor's bad faith filing is so brazen that the likelihood of success on appeal is low and because the next foreclosure sale will not take place immediately.

## IV.     CONCLUSION

For the reasons discussed above, the Court finds that the automatic stay should be lifted pursuant to Bankruptcy Code section 362(d)(3) and Movant is entitled to *in rem* relief pursuant to Bankruptcy Code section 362(d)(4). The Movant's counsel shall promptly submit a separate order granting such relief.

Dated:    January 24, 2020
          New York, New York

                                          ___*Martin Glenn*_____
                                             MARTIN GLENN
                                       United States Bankruptcy Judge